UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA,

v.   Case No.:  3:21cr63-MCR

MICHAEL J. GIVEN.
_____/

# MOTION FOR A LIMITED BILL OF PARTICULARS AND INCORPORATED MEMORANDUM OF LAW

Defendant, Michael J. Given ("Dr. Given"), respectfully moves this Court, pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure, for the entry of an Order directing the government to identify the allegedly fraudulent statements that support counts 1 through 28 of the 61-count Indictment. In support of this motion, Dr. Given states the following:

## INTRODUCTION

Dr. Given is charged for his alleged participation in a healthcare fraud scheme spanning approximately five (5) years. The government claims that during that time, Dr. Given submitted or caused to be submitted false and fraudulent statements to health care benefit programs ("HCBPs"). However, the government has not identified any of the allegedly false and fraudulent statements that Dr. Given submitted or caused to be submitted. The defense has not located in the

1

massive amount of discovery the allegedly false and fraudulent statements. The government has refused to identify which statements support counts 1 through 28. Dr. Given is thus unaware of which statement(s) the government intends to use at trial to support those 28 counts. This precludes his ability to effectively prepare for the trial that is scheduled to commence on March 7, 2022.

## BACKGROUND

Dr. Given was arraigned on September 24, 2021, by way of Indictment with 28 counts of healthcare fraud in violation of 18 U.S.C. §§ 1347, 2 and 32 counts of unlawfully dispensing controlled substances in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), 841 (b)(2), and 841(b)(3), and 18 U.S.C. § 2. [*See* ECF No. 1]. This motion only concerns counts 1–28, which are the healthcare fraud counts.

The Indictment does not identify the allegedly fraudulent statements made by Dr. Given. Rather, it generally alleges that Dr. Given submitted or caused to be submitted false and fraudulent claims to HCBPs by claiming he was present when, in fact, he was out of the state or country:

> 2. Although GIVEN did not treat the patients who were provided pre-signed prescriptions for controlled substances, <u>GIVEN submitted or caused to be submitted false and fraudulent claims to HCBPs, including Medicare, Medicaid or one of its MCOs, and TRICARE, for office visits alleged to have been conducted by GIVEN, but were, in fact, conducted by a PA while GIVEN was out of the state or country</u>.

> 3. Patients who were issued pre-signed prescriptions for controlled substances bearing GIVEN's name, signature, and DEA registration number <u>while GIVEN was out of the state or country</u> presented at various pharmacies within the Northern District of Florida. <u>GIVEN caused pharmacies to submit fraudulent claims for reimbursement</u> for the unlawfully issued prescriptions to HCBPs, including Medicare, Medicaid or one of its MCOs, and TRICARE.
>
> 4. <u>The HCBPs would not have reimbursed the claims for office visits purportedly conducted by GIVEN had they known that GIVEN had not actually encountered or issued prescriptions to patients on the dates claimed</u> and that patients instead were seen by a PA who issued unlawful prescriptions that did not comport with DEA requirements. The HCBPs also would not have paid pharmacy reimbursement claims for controlled substance prescriptions had they known they had been unlawfully issued.

*Id.* at 6–7, ¶¶ B.2–B.4 (emphasis added).[1]

The Indictment lists 28 counts showing the date the fraudulent claims were allegedly filed. *See id.* However, the Indictment never identifies when Dr. Given allegedly made any fraudulent statements. *See id.*

The Indictment also does not identify (1) who made the allegedly fraudulent statements, (2) to whom the allegedly fraudulent statements were made, (3) when

---

[1] The government also alleges that Dr. Given violated the United States Code by "direct[ing] his staff to fill out prescriptions bearing his name and DEA registration number for controlled substances for patients . . . while he was out of the state or country," *id.* at 5, and that "[c]ontrary to DEA requirements, GIVEN did not date and sign the prescriptions on the same day the prescription was issued to patients." *Id.* at 6. This is the substantive conduct at issue in counts 29 through 61, which are the charges for unlawfully dispensing controlled substances in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), 841 (b)(2), and 841(b)(3), and 18 U.S.C. § 2. Dr. Given does not ask for a bill of particulars on those counts.

the allegedly fraudulent statements were made, (4) whether the statements were oral or written, or (5) the substance of the allegedly fraudulent statements.

Dr. Given, with assistance of undersigned counsel, has invested a substantial amount of time and effort poring through the government's discovery. To date, the defense has not identified any statements whereby Dr. Given falsely claimed that he was present for a patient interaction when he was in fact out of the state or country. The defense asked the government to identify these statements. The government responded that all these questions have already been answered by the Indictment or the discovery provided or are questions about the government's charging decisions that are not appropriate or necessary to be disclosed.

The government's response does not answer Dr. Given's question. The Indictment does not identify any of the allegedly fraudulent statements. Moreover, Dr. Given has not located in discovery any allegedly fraudulent statements that support these 28 counts.

The discovery provided in this case is extensive and voluminous. As of the filing of this motion, the government has produced approximately 45 Gb of data consisting of 7,659 documents or 865,362 pages. These include patient files or prescriptions for more than 3,000 different patients not included in the Indictment. Only 77,386 pages are Bates-stamped for identification.

Furthermore, the government produced approximately 960 Gb of full disk images, which are further segmented into 2 Gb partitions of eight separate devices. The delivery, as is, requires utilization of Image Mounting tools/software that can allow forensic images to be mounted as a drive or physical device. Although this action opens the image as a drive and allows you to browse the content in Windows and other applications, it is for read-only viewing. This means that the defense's ability to use this data is limited.

This is not the only data produced by the government. The government further invited the defense to manually review and scan thirty-nine (39) banker boxes of documents seized from Dr. Given's medical office that are in the government's possession, as well as an additional fifteen (15) boxes of materials produced by pharmacies in response to the government's legal process.

Dr. Given does not know which statements that the government intends to use to support counts 1 through 28. He is unaware of any evidence that could support the government's contention that he "knowingly and willfully execute[d] and attempt[ed] to execute a scheme to defraud a health care benefit program and to obtain, by means of material false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of a health care benefit program." *Id.* at 7.

Dr. Given's request for a bill of particulars is not a fishing expedition to divine the government's theories of prosecution. Rather, it is a request for information so he can be prepared to meet the charges against him and prevent unfair surprise. Thus, under the unique circumstances of this case, a bill of particulars is constitutionally required. Accordingly, Dr. Given seeks a bill of particulars as to the following:

> As to counts 1 through 28, please identify (1) what is the allegedly fraudulent statement, (2) who made the allegedly fraudulent statement, (3) to whom the allegedly fraudulent statement was made, (4) when the allegedly fraudulent statement was made, and (5) a copy of the document on which any allegedly fraudulent statement was made.

This relief is supported by the applicable law and mandated by the interests of justice.

## **MEMORANDUM OF LAW**

A defendant's right to particularization of vague allegations is grounded in Rules 7(c)(1) and 7(f) of the Federal Rules of Criminal Procedure. Rule 7(c)(1) states that an "indictment . . . shall be a plain, concise and definite written statement of *the essential facts* constituting the offense charged." (emphasis added). The rule codifies the requirement of the Sixth Amendment that "in all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation." *See generally Russell v. United States*, 369

U.S. 749, 770–71 (1962) ("[w]here guilt depends so crucially upon such a specific identification of fact, our cases have uniformly held that an indictment must do more than simply repeat the language of the criminal statute").

A bill of particulars serves "[1] to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense, [2] to minimize surprise at trial, and [3] to enable him to plead double jeopardy in the event of a later prosecution for the same offense." *United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986) (quoting *United States v. Cole,* 755 F.2d 748, 760 (11th Cir. 1985)). A bill of particulars "supplements an indictment by providing the defendant with information necessary for trial preparation." *Id*. Accordingly, a bill of particulars may be granted on a showing "that without the requested particular, his own investigation could not glean the facts or theory which would preclude prejudicial surprise or allow meaningful opportunities for defense preparation to meet the government's evidence and theories." *See, e.g., United States v. Thevis*, 474 F. Supp. 117, 124 (N.D. Ga. 1979).

While a bill of particulars "may not be used to obtain a detailed disclosure of the government's *evidence* prior to trial," *United States v. Perez*, 489 F.2d 51, 71 (5th Cir. 1973) (citations omitted), a defendant is entitled to "enough information about the charge to prepare his defense" even if in doing so, "the effect is

7

disclosure of evidence or of theories." *United States v. Barnes*, 158 F.3d 662, 665 (2d Cir. 1998); *see also Thevis*, 474 F. Supp. at 123 (holding that it is not "a legitimate objection to a motion for bill of particulars that it calls for an evidentiary response or a legal theory of the government, when the furnishing of this information is necessary to prepare a defense and to avoid prejudicial surprise at trial") (citations omitted).

The government typically objects to having to provide a bill of particulars by arguing that the answers lie in discovery. That is not the case here. As previously noted, the massive nature of the discovery, while helpful in many ways, simply does not provide the necessary particularization required under the circumstances of this case. *See United States v. Perraud*, No. 09-6019-CR-Zloch, 2010 WL 228013, at *11 (S.D. Fla. Jan. 14, 2000) (the Federal Rules of Criminal Procedure "does not endow the Government with the right to drown a defendant in a sea of irrelevant, or even tangentially relevant, documents in an effort to hide the few particularly relevant documents from a defendant in the hope that trial will ensue before the defendant discovers such materials"). The problem is especially acute in this case concerning the actual statements at issue, whether they be oral or written, and where they can be found. Dr. Given does not have this information.

One of the leading decisions on this issue is the Second Circuit's opinion in *United States v. Bortnovsky*, 820 F.2d 572 (2d Cir. 1987). The indictment in *Bortnovsky* charged the defendants engaged in a scheme to defraud the government by submitting false and inflated insurance claims to the Federal Emergency Management Administration and New York Property Insurance Underwriting Association for burglary losses. *See id.* However, similar to the Indictment before this Court, that indictment failed to identify which of the burglaries claimed were the ones the government intended to prove were fraudulent, or which of the numerous documents were allegedly falsified. *See id.* In discovery, the government produced over 4,000 documents. *See id.* However, the Second Circuit held the defendants were hindered in preparing their defense, and thus, a bill of particulars was, indeed, appropriate. *Id.* at 574. The court reasoned that "the government did not fulfill its obligation merely by providing mountains of documents to defense counsel who were left unguided as to which documents would be proven falsified or which of some fifteen burglaries would be demonstrated to be staged." *Id.* at 575.

Additionally, the *Bortnovsky* court admonished the government for the way in which it conducted its prosecution:

> While we commend the Government for cooperating in the turning over of documents prior to trial, we do not look with favor on the

> manner in which the Government conducted the prosecution . . . The Government did not fulfill its obligation merely by providing mountains of documents to defense counsel who were left unguided as to which documents would be proven falsified or which of some fifteen burglaries would be demonstrated to be staged.

*Id.* at 575 (emphasis added).

Courts throughout the Eleventh Circuit have echoed the holding in *Bortnovsky*. For example, the Middle District of Florida ruled in the defense's favor on motion for a bill of particulars asking the government to identify allegedly false or fraudulent documents and statements in a mail fraud case. *United States v. McCoy,* 492 F. Supp. 540, 545 (M.D. Fla. 1980). The court explained:

> The government in its verified response to the defendant's motion for bill of particulars, has sought to foreclose the need for a bill of particulars by generally apprising the defendant of the evidence upon which the government intends to rely at trial. The defendant has good cause to be unsatisfied with the government's response. The purpose of a bill of particulars is not merely to apprise the defendant of the voluminous materials and numerous witnesses used in the preparation of the government's case.

*Id.* The Middle District held: "The defendant is entitled to a bill of particulars setting forth each false and fraudulent pretense and representation described generally in the indictment." *Id.*

Similarly, in *United States v. Velez*, the defense requested that the government identify the allegedly false and fraudulent statements that the government contended were used to conceal the true origin of the legal fees. No.

05-20770-CR, 2008 WL 11454798, at *4 (S.D. Fla. July 11, 2008). The government responded in the same way that the government responded in this case—by arguing that identification of the statements would necessitate revealing much of their expected evidence at trial. *Id.* In *Velez*, the defense responded that the simple identification of statements alleged to be false or fraudulent would not result in the exposition of any evidence beyond the minimum required to prepare a defense. *Id.* The Southern District of Florida granted the motion, holding "[t]he defendant is entitled to a bill of particulars setting forth each false and fraudulent pretense and representation described generally in the indictment . . . [a]s the statements appear to play an integral part of both the prosecution and defense, and the government has put forth no persuasive reason why these statements should not be identified, a bill of particulars is appropriate." *Id.* (citing *United States v. McCoy,* 492 F. Supp. 540, 545 (M.D. Fla. 1980)).

The same reasoning was applied yet again in *United States v. Alabed*, in which the Northern District of Georgia granted a motion for bill of particulars wherein the defense sought specific notice as to the false statements and/or material omissions they allegedly made in furtherance of the conspiracy or scheme to defraud. No. 119CR00089MHCJSA, 2019 WL 7842413, at *4–5 (N.D. Ga. Dec. 4, 2019), *report and recommendation adopted,* No. 1:19-CR-089-MHC-JSA,

2020 WL 114415 (N.D. Ga. Jan. 9, 2020). In that case, just as here, the government responded that the answers to the defense question were already identified by being provided in discovery. *Id.* The court disagreed:

> Without more concrete information, however, the Court cannot assume that the alleged false statements have been specifically identified as such in the manner to which Defendants are entitled. The Government's obligation, after all, is not just to hand over reams of voluminous discovery and ask the Defendants to determine for themselves what are the statements that the Government considers to be false. The Defendants are entitled to better particularization of those false statements in the instrument charging them with fraud, or in a bill of particulars.

*Id.* (citing *United States v. Youn*, 2015 WL 6693714, *10 (N.D. Ga. Nov. 2, 2015) (Totenberg, J., adopting Report and Recommendation from Brill, M.J.) (denying motion to dismiss on basis of non-specific description of fraudulent statements, because such a deficiency is curable by a bill of particulars, and noting "[i]n fraud cases in other district courts where the indictment has failed to identify specific documents on which the prosecution is based, courts have ordered the government to provide a bill of particulars identifying the specific documents that the government contends are fraudulent").

Courts from other Circuit Courts of Appeals around the country have followed this same reasoning. *See, e.g., United States v. Sampson*, 448 F. Supp. 2d 692, 696 (E.D. Va. 2006) (explaining that "[i]n the case of fraud or perjury, it is

12

critical that the government identify in the indictment the dates of the fraudulent conduct, the *specific fraudulent documents*, and the *fraudulent statements within the documents*") (emphasis added); *United States v. Nachamie*, 91 F. Supp. 2d 565, 571 (S.D.N.Y. 2000) (bill of particulars was ordered where the defendants were charged with conspiracy to commit Medicare fraud, and the government "produced over 200,000 pieces of paper in hundreds of boxes and files, relating to 2,000 Medicare claims."); *United States v. Upton*, 856 F. Supp. 727 (E.D.N.Y. 1994) (the court ordered the government to specifically identify the "falsified" records because "[t]he purpose of requiring the government to identify which documents it will rely upon at trial in a situation such as this—where there are thousands of documents—is to allow the defendant to adequately prepare his or her defense."); *United States v. Davidoff*, 845 F.2d 1151, 1154 (2d Cir. 1988) (reversing conviction where government relied upon uncharged acts of extortion, recognizing that the "wide latitude" given the government to formulate broad-ranging charges comes with "an obligation to particularize the nature of the charge"); *United States v. Turkish*, 458 F. Supp. 874 (S.D.N.Y. 1978), *aff'd*, 623 F.2d 769 (2d Cir. 1980) (granting bill of particulars in fraud case where defense sought "a direction to the government to indicate which of the approximately 25,000 documents relating to this case in the government's possession it intends to use at trial, rather than

13

'burying the defendant in paper' by merely generally making all of the documents available to defendants").

In this case, the government does not appear to contest that Dr. Given is entitled to know which statements were allegedly fraudulent. Rather, the government responded to Dr. Given that answers have been furnished in discovery—yet the particular statements have not been identified. The government thus has refused to identify the allegedly false statements at issue in counts 1 through 28.

This response is insufficient and contrary to the decisions cited *supra*. The government's obligation is not just to hand over reams of voluminous discovery and ask the defense to determine for themselves the statements that the government considers to be false. Dr. Given's request is of necessity for him to adequately prepare his defense. The government cannot discharge its fundamental obligations by sending over hundreds of thousands of documents and then suggesting that the defense guess as to which documents or statements support the fraud charges. Stated differently, identification of *which* documents or statements were allegedly falsified is paramount to the preparation of Dr. Given's defense.

## CONCLUSION

WHEREFORE, Dr. Given respectfully requests that this Court direct the government to answer the following:

> As to counts 1 through 28, please identify (1) what is the allegedly fraudulent statement, (2) who made the allegedly fraudulent statement, (3) to whom the allegedly fraudulent statement was made, (4) when the allegedly fraudulent statement was made, and (5) a copy of the document on which any allegedly fraudulent statement was made.

14

Dr. Given thus asks that the Court grant the instant motion for a limited bill of particulars.

ORAL ARGUMENT REQUESTED.

*/s/ David L. McGee*
David L. McGee
FL Bar No. 220000
Matthew P. Massey
FL Bar No. 1008337
BEGGS & LANE RLLP
501 Commendencia Street
Pensacola, Florida 32502
Telephone: (850) 432-2451
Facsimile: (850) 469-3331
Attorneys for Michael J. Given

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)**

This document complies with the 8,000 word-count limit of Local Rule 7.1(F) because it contains 3,356 words, excluding those portions exempted under Local Rule 7.1(F).

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(B)

Pursuant to Local Rule 7.1(B), Dr. Given, through his attorneys, conferred via email communications with Assistant United States Attorney Alicia Forbes, who opposes the relief requested herein.

## CERTIFICATE OF SERVICE

I CERTIFY that this document has been filed via CM/ECF on January 4, 2022, for electronic distribution to counsel of record in this action.

*/s/ David L. McGee*
David L. McGee
FL Bar No. 220000
Matthew P. Massey
FL Bar No. 1008337
BEGGS & LANE RLLP
501 Commendencia Street
Pensacola, Florida 32502
Telephone: (850) 432-2451
Facsimile: (850) 469-3331
Attorneys for Michael J. Given