UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA,

v.                                          Case No.:  3:21cr63-MCR

MICHAEL J. GIVEN.

_____/

## MOTION IN LIMINE TO EXCLUDE OTHER CRIMES EVIDENCE AND INCORPORATED MEMORANDUM OF LAW

Defendant, Michael J. Given ("Dr. Given"), moves this Court for the entry of an Order that prohibits the Government from introducing (1) other crimes evidence consisting of actions that occurred prior to the charged counts and/or is materially dissimilar to the conduct alleged in the Superseding Indictment, (2) uncharged conduct that is not addressed anywhere in the Superseding Indictment or the Government's expert disclosure, and (3) other evidence that is highly prejudicial to  Dr. Given and/or irrelevant to the conduct alleged in the Superseding Indictment.  In support of this motion, Dr. Given states the following:

## INTRODUCTION

Any analysis of the issues raised by this motion must begin with a review of the unusual indictment brought by the Government.

First, the Superseding Indictment charges 33 substantive counts of dispensing controlled substances in violation of the Controlled Substances Act

("CSA"), each of which occurred on narrowly defined dates between October 4, 2016 and January 18, 2018.  Yet, paragraph three of the Superseding Indictment alleges a series of ill-defined and unspecified events that began on March 23, 2013—two and a half years before the first charged event—and extends to June 28, 2018, six months after the last charged event.  Apparently, the Government is seeking to evade the requirements for introducing evidence of other wrongs (Rule 404b) by making a vague allegation of events that occurred years before and extended to six months after.

Second, the same day as this motion is being filed, the United States Supreme Court issued its decision in *Ruan v. United States*, 597 U.S. ____, Nos. 20-1410 and 21-5261 (2022).  This decision significantly changes the Government's case and burden of proof.  The question before the Court in *Ruan* concerned the state of mind that the Government must prove to convict doctors of violating the CSA.  The Supreme Court held that "[a]fter a defendant produces evidence that he or she was authorized to dispense controlled substances, the Government must prove beyond a reasonable doubt that the defendant knew that he or she was acting in an unauthorized manner or intended to do so." *Id.*, *2.  In other words, the Government—which admits in the Superseding Indictment that Dr. Given was authorized to dispense controlled substances [Doc. No. 27, ¶ 2]—

2

must prove that Dr. Given subjectively intended to violate the CSA or, in fact, knew that he was violating the CSA when he treated those patients. *See id.* There is no evidence in this case that would amount to such conduct, either as alleged in the Superseding Indictment or as found throughout discovery.

A third unusual aspect of the Superseding Indictment is the alleged factual basis of the dispensing counts.  The Government is taking what, to counsel's knowledge, is the unprecedented position that a doctor who fills out and signs a valid prescription but allows that prescription to be delivered to the patient several days later by a physician assistant is guilty of the criminal offense of dispensing controlled substances in violation of 21 U.S.C. § 841 and can be sentenced to a term in federal prison for up to 20 years.  21 U.S.C. § 841(b)(1)(C).  What the Government is attempting to do is convert an alleged noncriminal technical violation of a routine regulation into a serious criminal violation.

The federal courts have, over the years, dealt with many cases in which doctors were charged with dispensing controlled substances and in doing so have identified physician practices that evidence a violation of the CSA.  In addressing this precise issue, Judge Proctor has written about the *Rosen* factors that evidence violative conduct:

> a well-established body of case law provides physicians
> with ample notice of what types of practices violate the

3

> CSA. . . . long line of decisions affirming physicians' convictions under the CSA adequately identify certain prescribing practices that suggest a physician dispensed controlled substances in violation of the CSA. Those practices include: (1) prescribing an inordinately large quantity of controlled substances; (2) issuing large numbers of prescriptions; (3) failing to physically examine patients; (4) warning patients to fill prescriptions at different drug stores; (5) issuing prescriptions to patients known to be delivering the drugs to others; (6) prescribing controlled drugs at intervals inconsistent with legitimate medical treatment; (7) using street slang rather than medical terminology for the drugs prescribed; (8) issuing prescriptions where there exists no logical relationship between the drugs prescribed and the treatment of the patient's alleged condition; and (9) writing more than one prescription on a single occasion and postdating the additional prescriptions to spread them out.

*United States v. Buckingham*, No. 418CR00376RDPJEO2, 2018 WL 6570874, at *7 (N.D. Ala. Dec. 13, 2018), citing *United States v. Rosen*, 582 F.2d 1031, 1032 1036 (5th Cir. 1978). *See also United States v. Joseph*, 709 F.3d 1082, 1104 (11th Cir. 2013) (citing the *Rosen* factors and affirming physician's conviction under CSA based in part on evidence that he wrote more than 43,000 prescriptions for controlled substances in a five-year period); *United States v. Boulier*, 518 Fed. Appx. 848, 851 (11th Cir. 2013) (affirming physician's conviction under the CSA based on presence of *Rosen* factors); *United States v. Merrill*, 513 F.3d 1293, 1298 (11th Cir. 2008) (affirming physician's conviction under CSA where evidence

4

showed he wrote more than 33,000 prescriptions in three-year period, prescribed the same patient multiple controlled substances in a given visit, reauthorized prescriptions for the same controlled substance within less than a month of each other, and frequently prescribed high doses of controlled substances citing *Rosen* factors).

The Superseding Indictment alleges none of the incriminating *Rosen* factors identified above.  Instead, the Government claims that prior to traveling out of the state or country, Dr. Given would prepare, date, and sign prescriptions for his established patients, which his physician assistants would provide to patients at their next scheduled appointment.  The Government contends that this practice violated DEA requirements that prescriptions be signed and dated on the day they are issued.  This allegation relies on 21 C.F.R. § 1306.05, which is a non-criminal regulation that requires prescriptions for Schedule II controlled substances to be signed and dated on the day they are issued.  The Government's apparent contention is that a violation of § 1306.05 is by itself a basis for convicting a doctor of illegally dispensing controlled substances.

Undersigned counsel can find no other case in which a violation of § 1306.05 by itself was found to support an allegation of illegally dispensing controlled substances.  There are cases in which alleged violations of § 1306.05

have been admitted into evidence.  In each of those cases the Courts have noted that a violation of § 1306.05 does not constitute a per se violation of Section 841. *See, e.g., United States v. Joseph*, 709 F.3d 1082, 1102 (11th Cir. 2013) ("we agree that a violation of section 1306.05 does not constitute a per se violation of section 841 . . ."); *United States v. Chaney*, 211 F. Supp. 3d 960, 969 (E.D. Ky. 2016), *aff'd,* 921 F.3d 572 (6th Cir. 2019) ( "Although Dr. Chaney's practice of pre-signing prescriptions was not *per se* criminal, the jury was entitled to consider evidence of this practice as relevant to the charges against him.").  In *Chaney*, the trial court struck all references to § 1306.05 from the jury instructions because it agreed with defendant that "that 21 C.F.R. § 1306.05(a), which prohibits pre-signing prescriptions does not create strict liability for a criminal violation of 21 U.S.C. § 841(a)." *Id.*  Notably, in both of these cases there was abundant evidence of the *Rosen* factors identified above.  *See Joseph*, 709 F.3d at 1102; *Chaney*, 921 F.3d at 589.

The Government's burden has been made significantly more difficult by the Supreme Court's June 27, 2022, decision in *Ruan v. United States*.  The Government's Superseding Indictment appears to be based on the assumption that a violation of § 1306.05 alone is a sufficient basis for a conviction of violating § 841.  Yet, under *Ruan*, the Government is required to prove beyond a reasonable

doubt that the issuing physician did not issue the prescription for what he believed was "a legitimate medical purpose in the course of his professional practice." *Ruan*, *supra* at pp. 2–3.   The violation of one of the myriads of regulations applicable to medical practice would not meet *Ruan's* standard.

The Defense believes that the unprecedented nature of the Superseding Indictment in this case underlies the Government's effort to introduce evidence of what it claims are "other wrongs."  For the reasons discussed below, this should not be permitted.

## **FACTS**

1.     Dr. Given was arraigned on September 24, 2021, by way of Indictment with 28 counts of healthcare fraud in violation of 18 U.S.C. §§ 1347, 2 and 32 counts of unlawfully dispensing controlled substances in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), 841 (b)(2), and 841(b)(3), and 18 U.S.C. § 2. [*See* ECF No. 1].

2.     Dr. Given filed a Motion for Bill of Particulars as to Counts 1 through 28—the fraud counts—on January 4, 2022, asking the Court to direct the Government to identify the allegedly fraudulent statements made by Dr. Given. [*See* ECF No. 25].

7

3. In response, the Government dropped the fraud counts and re-indicted the case.

4. Specifically, a federal grand jury returned a Superseding Indictment that only charged Dr. Given with the remaining 33 Counts of unlawfully dispensing controlled substances in violation of the CSA. [*See* ECF Nos. 26, 27].

5. As reflected in the Superseding Indictment, the Government's case is entirely dependent on Dr. Given's alleged practice of allowing providers such as physician assistants to deliver to patients, 33 prescriptions he had signed and filled out prior to leaving the area to attend medical conferences, study for medical boards, or go on vacation.

6. Dr. Given's prescription-writing practice, according to the Government, violates 21 C.F.R. § 1306.05(a) ("All prescriptions for controlled substances shall be dated as of, and signed on, the day when issued and shall bear the full name and address of the patient, the drug name, strength, dosage form, quantity prescribed, directions for use, and the name, address and registration number of the practitioner.").

7. The Superseding Indictment alleges that the relevant conduct occurred for almost five years, "[b]etween on or about March 23, 2013, and on or about June 28, 2018." [*Id*. at 2].

8.     However, the 33 Counts only span 16 months, from October 4, 2016 (Count 1) to January 18, 2018 (Count 33).  [ECF No. 27 at pp. 4–5].

9.     On June 16, 2022, the Government advised Dr. Given by letter that it intends to introduce evidence at trial establishing the following:

- the general allegations in the Introduction section of the superseding indictment, that is, the defendant's general practices for prescribing and causing to be prescribed controlled substances to patients between approximately March 2013 and June 2018;

- specific instances showing the defendant followed that general practice, including those charged in Counts One through Thirty-Three of the superseding indictment as well as on other dates, to other patients, and/or involving other controlled substances;

- the exception to that general practice was regarding the defendant's substance abuse treatment patients, who received pre-signed prescriptions for Suboxone (buprenorphine/naloxone) without seeing any mid-level practitioner while the defendant was out of state or country;

- the defendant's knowledge and participation in a Florida Department of Health investigation into his prescribing practices, which resulted in him signing a settlement agreement by which he agreed that such practices were unlawful, to pay a fine, and take a remedial risk management course, and none of which the defendant disclosed to Ascension Sacred Heart; and

- the defendant's prescribing practices generally and specifically as charged in the superseding indictment violated

9

federal and Florida laws and regulations and Ascension Sacred
Heart internal policies governing controlled substance
prescribing by physicians.

A copy of that letter is attached hereto as **Exhibit 1.**

10.    Thus, the Government wishes to admit evidence of the Defendant's

other practices for prescribing controlled substances between March 2013 and June

2018, including allegedly wrongful acts, most of which are outside the statute of

limitations.  *See* 18 U.S.C. § 3282 and factually different than the charged conduct.

11.    This includes information regarding a settlement agreement entered

into by Dr. Given and the State of Florida Board of Medicine on December 19,

2016.

12.    Relevant documents pertaining to that agreement are attached as

**Exhibit 2**, which includes the Settlement Agreement, including the Final Order

(pp. 1–3), the Settlement Agreement (pp. 4–13), and the Administrative Complaint

(pp. 14–17).

13.    The facts and circumstances of that matter are wholly dissimilar to the

acts at issue in this case.

14.    In that administrative action, the State of Florida alleged that Dr.

Given "pre-signed blank prescriptions pads and provided the pre-signed

prescription pads to the physic assistant and/or a nurse practitioner at his clinic to

be used to prescribe drugs to patients in his absence" in alleged violation of a Florida regulation prohibiting "presigning blank prescription forms." *Id.* at p. 15, ¶ 4; *see also* § 458.331(1)(aa), Fla. Stat. (2014).

15.    The State of Florida also alleged that the pre-signed prescription pads "were kept in a safe, and only [Dr. Given], a nurse practitioner, and the physician assistant had access to the safe.   The pre-signed prescription pads were subsequently filled in by the nurse practitioner, and/or by the physician assistant." *Id.* at p. 15, ¶¶ 5–7.

16.    Pursuant to his Settlement Agreement in 2016, Dr. Given neither admitted nor denied the allegations of fact as stated in the Administrative Complaint. *Id.* at p. 5.

17.    Also part of the Settlement Agreement, Dr. Given agreed to complete several hours of Continuing Medical Education, pay a $5,000 administrative fine, and "offer no evidence, testimony or argument that disputes or contravenes any stipulated fact or conclusion of law." *See id.* at pp. 5–8.

18.    The Florida provision at issue in that administrative proceeding, § 458.331(1)(aa), Fla. Stat. (2014), subjects a physician to administrative fine for "[p]resigning blank prescription forms."

19.    Here, in contrast, Dr. Given is charged for different conduct and a different statute.  He is not charged with signing blank prescription forms.

20.    Specifically, he is alleged to have violated a federal regulation, 21 C.F.R. § 1306.05(a), which states, "All prescriptions for controlled substances shall be dated as of, and signed on, the day when issued and shall bear the full name and address of the patient, the drug name, strength, dosage form, quantity prescribed, directions for use, and the name, address and registration number of the practitioner."

21.    These are not the same laws.

22.    They do not involve the same type of alleged conduct.

23.    There is no overlap in time between the 2014 incident and the charges in this case

24.    The Government also wishes to admit evidence of Dr. Given's Suboxone-prescribing practices and unidentified "federal and Florida laws." **Exhibit 1** at 2.

25.    The Government did not charge Dr. Given for any conduct related to Suboxone.  *See generally* Superseding Indictment.  [ECF No. 27].

26.    The Government also did not charge Dr. Given with violation of any other unidentified "federal and Florida laws," which the Government apparently

intends to accuse Dr. Given of violating at one or more unidentified times from March 23, 2013, until on or about June 28, 2018. *Id.*

27.    Additionally, the Government failed to disclose any information about Suboxone or these other unidentified laws in its expert disclosure, a copy of which is attached hereto as **Exhibit 3**.

28.    This report does not include any information about Suboxone. *Id.*

29.    This report also does not address any unidentified state or federal regulations other than one regulation concerning the treatment of acute pain. *See id.* at 9.

30.     Thus, the Government is attempting to move into evidence a vast array of highly prejudicial evidence that is far outside the conduct alleged in the Superseding Indictment.

31.    By way of this motion, Dr. Given objects to the introduction of the evidence identified in the Government letter.

## <u>MEMORANDUM OF LAW</u>

Rule 404(b) prohibits the use of extrinsic evidence of a defendant's prior crimes or other bad acts to show the defendant's bad character or propensity to commit the charged crimes. *United States v. Costa*, 691 F.2d 1358, 1361 (11th Cir. 1982). However, this kind of extrinsic act evidence is admissible for other

13

purposes, such as to prove motive, intent, plan, knowledge, absence of mistake, or lack of accident. *See* Fed. R. Evid. 404(b)(2). Evidence is admissible under Rule 404(b) where: (1) it is relevant to an issue other than the defendant's character; (2) sufficient evidence is presented that would allow a jury to find that the defendant committed the extrinsic act; and (3) its probative value is not substantially outweighed by the potential for undue prejudice. *United States v. Ellisor*, 522 F.3d 1255, 1267 (11th Cir. 2008).

The Eleventh Circuit, along with its sister circuits, has developed an alternative theory of admissibility commonly referred to as "inextricably intertwined" evidence. Under this theory, courts routinely admit evidence that may otherwise be excluded under 404(b) if the evidence meets the following requirements: "(1) it must be relevant to an issue other than [the] defendant's character; (2) there must be sufficient proof to enable a jury to find by a preponderance of the evidence that the defendant committed the act(s) in question; and (3) the probative value of the evidence cannot be substantially outweighed by undue prejudice, and the evidence must satisfy Rule 403." *United States v. Acosta*, 660 F. App'x 749, 754 (11th Cir. 2016)

Federal Rule of Evidence 403 functions as a safeguard to prevent otherwise admissible, *i.e.*, relevant, evidence from being admitted. Rule 403 excludes

14

relevant evidence if the probative value is substantially outweighed by unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.  FED. R. EVID. 403.  "The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged."  *Old Chief v. United States*, 519 U.S. 172, 180 (1997).  The committee notes regarding unfair prejudice explain that evidence causes an unfair prejudice if it has any tendency to cause a fact finder to make a decision or inference on an improper basis.  *Old Chief,* 519 U.S. at 180; Advisory Committee's Notes on Fed. Rule Evid. 403, 28 U.S.C. App., p. 860.

### A. The Evidence is Not Explicitly Charged.

The evidence the Government seeks to admit or intends to admit at trial is not explicitly charged in the Superseding Indictment.  Although the Government contends otherwise in its letter, a plain reading of the Superseding Indictment shows that the Government only charged 33 Counts spanning the date range of October 2016 to January 2018.  There are no other charged counts outside of this date range.   Additionally, none of the 33 Counts include prescriptions for Suboxone, none involve the signing of blank prescriptions, and the Government

15

does not identify or charge Dr. Given for any conduct related to the unidentified other "state and federal laws" that he allegedly violated.

Despite these facts, the Government believes that it has "explicitly charged" Dr. Given for this alleged conduct in the Superseding Indictment.  This belief is misplaced.  The Superseding Indictment does not include a single count for prescribing Suboxone, does not include a single count from before October of 2016, does not include any allegation of signing blank prescriptions, and does not identify any other state or federal laws.  Moreover, the Government's expert disclosure similarly fails to address any of these issues.  Therefore, the Court should exclude this evidence because it is not explicitly charged.

**B. The Evidence is Not Inextricably Intertwined.**

The evidence the Government seeks to admit at trial is not inextricably intertwined with the conduct charged in the Superseding Indictment.  In order for evidence to be inextricably intertwined it must form  an "integral and natural part of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted." *United States v. Foster*, 889 F.2d 1049, 1053 (11th Cir. 1989).  Nothing contained in the Settlement Agreement or in the uncharged conduct from March 2013 to June 2018 is integral to the surrounding offenses for which Dr. Given is charged.  None of the 33 charged offenses or violations include

Suboxone as the controlled substance and none involve signing blank prescriptions. Further, the Government's expert report never mentions Suboxone or Dr. Given's practice as it relates to Suboxone.

The evidence of uncharged conduct from March 2013 to June 2018 is not relevant to any issue other than Dr. Given's character. The alleged conduct at issue in the Settlement Agreement concerned a Florida Department of Health investigation in which the State alleged that on "[o]ne or more occasions in or about 2014, [Dr. Given] signed blank prescription pads and provided the signed prescription pads to the physician assistant and/or a nurse practitioner at his clinic to be used to prescribe drugs to patients in his absence." **Exhibit 2** at p. 15, ¶ 4. That state law at issue in that proceeding, § 458.331(1)(aa), Fla. Stat. (2014), subjects a physician to administrative fine for "[p]resigning blank prescription forms." It is difficult to see how the signing of a blank prescription pad in 2014 could be inextricably intertwined with the 2016–2018 practice of having another medical professional deliver to a patient a prescription that had been fully filled out and signed some days before.

In contrast, in this case, Dr. Given is charged for different conduct and a different statute—that is, for violating a federal regulation, 21 C.F.R. § 1306.05(a), which states, "All prescriptions for controlled substances shall be dated as of, and

signed on, the day when issued and shall bear the full name and address of the patient, the drug name, strength, dosage form, quantity prescribed, directions for use, and the name, address and registration number of the practitioner."

As such, there is no basis for the Government to introduce this evidence to the jury under the guise that it is inextricably intertwined.

### C. The Evidence Falls Outside of the Scope of Rule 404(b).

The uncharged conduct and the settlement agreement between Dr. Given and the Florida Department of Health fall outside the scope of Rule 404(b) and should therefore be excluded. Pursuant to Rule 404, evidence of other crimes, wrongs, or acts is inadmissible to prove a person's character and show that the person acted in accordance with that character on a particular occasion. FED. R. EVID. 404. Evidence of crimes, wrongs, or other acts can be admissible to show motive, opportunity, intent, preparation, knowledge identity, absence of mistake, absence of intent. FED. R. EVID. 404.

Here, Dr. Given will not deny that he was required to abide by regulations including 21 C.F.R. § 1306.05(a). He will not deny the fact that he knew the regulations existed and that he was required to abide by those same regulations. Dr. Given similarly will not deny that when he had to be out of town, his practice was to pre-sign fully filled out prescriptions for established patients and have a

mid-level provider give the prescription to the patient after a patient examination. This is exactly what the indictment charges. The issue in this case will not be what Dr. Given did—it will be whether what he did constitutes a crime. Pursuant to the Supreme Court's decision today in *Ruan v. United States*, if the Government cannot prove beyond a reasonable doubt that Dr. Given knew he was acting in an unauthorized manner or intended to do so, then Dr. Given must be acquitted.

Dr. Given's conduct at issue in this case is also very different from the conduct at issue in the 2014 administrative action. There, he was alleged to have signed blank prescription pads and allowed a physician assistant to fill out the rest of the language required for the prescription. In this case, the Government is alleging that Dr. Given pre-signed and pre-filled the prescriptions for each patient, and the physician assistant only provided the prescription to the patient when he or she appeared at Dr. Given's office for a scheduled appointment. This is dissimilar conduct that proves nothing at issue in this case and introduction of the evidence-- which Dr. Given previously agreed not to contest by way of the settlement agreement—would also force Dr. Given to try a trial-within-a-trial. This evidence should not be admitted under Rule 404(b).

**D. The Evidence is Unfairly Prejudicial.**

Evidence about the uncharged conduct and the settlement agreement between Dr. Given and the Florida Department of Health is unfairly prejudicial and should therefore be excluded. If the evidence of uncharged conduct, out-of-office Suboxone prescribing practices, and the Settlement Agreement with the Florida Department of Health are admitted into evidence, it is reasonably foreseeable that a finder of fact could infer that on a specific occasion Dr. Given acted in conformance with that character. Therefore, the Court should exclude this evidence on the additional and independent reason that it is unfairly prejudicial.

## CONCLUSION

WHEREFORE, Dr. Given respectfully requests that this Court grant this motion in limine and prevent the government from introducing evidence about:

- the general allegations in the Introduction section of the superseding indictment, that is, the defendant's general practices for prescribing and causing to be prescribed controlled substances to patients between approximately March 2013 and June 2018;

- specific instances showing the defendant followed that general practice, including those charged in Counts One through Thirty-Three of the superseding indictment as well as on other dates, to other patients, and/or involving other controlled substances;

- the exception to that general practice was regarding the defendant's substance abuse treatment patients, who received pre-signed prescriptions for Suboxone (buprenorphine/naloxone) without seeing

any mid-level practitioner while the defendant was out of state or country;

- the defendant's knowledge and participation in a Florida Department of Health investigation into his prescribing practices, which resulted in him signing a settlement agreement by which he agreed that such practices were unlawful, to pay a fine, and take a remedial risk management course, and none of which the defendant disclosed to Ascension Sacred Heart; and

- the defendant's prescribing practices generally and specifically as charged in the superseding indictment violated federal and Florida laws and regulations and Ascension Sacred Heart internal policies governing controlled substance prescribing by physicians.

ORAL ARGUMENT REQUESTED.

/s/ David L. McGee
David L. McGee
FL Bar No. 220000
Matthew P. Massey
FL Bar No. 1008337
BEGGS & LANE RLLP
501 Commendencia Street
Pensacola, Florida 32502
Telephone: (850) 432-2451
Facsimile: (850) 469-3331
Attorneys for Michael J. Given

21

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)

This document complies with the 8,000 word-count limit of Local Rule 7.1(F) because it contains 4,392 words, excluding those portions exempted under Local Rule 7.1(F).

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(B)

Pursuant to Local Rule 7.1(B), Dr. Given, through his attorneys, conferred via email communications with Assistant United States Attorney Alicia Forbes, who opposes the relief requested herein.

## CERTIFICATE OF SERVICE

I CERTIFY that this document has been filed via CM/ECF on June 27 2022, for electronic distribution to counsel of record in this action.

*/s/ David L. McGee*
David L. McGee
FL Bar No. 220000
Matthew P. Massey
FL Bar No. 1008337
BEGGS & LANE RLLP
501 Commendencia Street
Pensacola, Florida 32502
Telephone: (850) 432-2451
Facsimile: (850) 469-3331
Attorneys for Michael J. Given